The relator relies upon what he denominates as the "absolute right" conferred by the *Page 442 
provisions of Section 4831-13, General Code, which became effective September 16, 1943, and superseded former Section 4696, General Code. The present language reads as follows:
"If the county board of education deems it advisable to transfer territory from a local school district within the county school district to an adjoining county school district or to an adjoining city or exempted village school district, or if a petition, signed by 75 per cent of the qualified electors residing within the territory proposed to be transferred, requests such a transfer, and such petition is filed with the county board of education on or before March first in an even numbered year, the proposed transfer of territory shall be included in the forthcoming plan of territorial organization of the school districts to be made and adopted under the provisions of Section 4831 of the General Code."
By his demurrer to the petition the respondent, of course, admits the truth of the relator's allegations that on February 25, 1944, there was filed with the Board of Education of Defiance County a petition signed by more than 75 per cent of the qualified electors residing in the territory sought to be transferred; that subsequently on March 3, 1944, that board of education passed a resolution adopting a plan of organization which approved and included the requested transfer of territory; that thereafter said plan was duly filed with the respondent Superintendent of Public Instruction; that later on May 31, 1944, the respondent approved the proposed plan of organization except as to the transfer of territory, for the reason that on April 7, 1944, there had been filed with the Board of Education of Defiance County a protest signed by more than 51 per cent of the qualified electors residing in said North Richland-Adams Local School District; that none of the signers of the protest *Page 443 
is an elector residing in that part of the district sought to be transferred; and that the Board of Education of Henry County has adopted a resolution offering to accept the territory proposed to be transferred to it.
The protest was filed under favor of Section 4831-3, General Code, which superseded former Section 4692, General Code, and became effective September 16, 1943, as did Section 4831-13,supra. The.present language of Section 4831-3 reads as follows:
"Any group of electors, qualified to vote in territory within the territorial boundary lines of the county school district, may, at any time prior to the second Monday in April following the adoption of the plan of organization by the county board of education, file with the county board of education a protest relating to the change or failure to change boundary lines of any local school district within the county school system, wherein said electors reside.
"Such protest shall be in writing, signed by the electors making such protest, specifically setting forth the nature of the protest together with the reasons therefor and shall be in duplicate.
"If such protest so filed be signed by 51 per cent or more of the electors of the local school district or districts so affected, then the county board of education and the Superintendent of Public Instruction shall not have the authority to adopt the plan of reorganization proposed so far as the said local school district or districts protesting are concerned."
It is the contention of the respondent that this section is dispositive of the case for the reason that the protest was signed by more than 51 per cent of the qualified electors of the district, and that the respondent was, therefore, without authority to adopt the plan. The relator insists that the two sections are wholly unrelated and that the latter section has no application whatsoever to the instant circumstances. *Page 444 
This conflict in views is due to the fact that the enactments of 1943 were mainly the result of an effort to recodify the statutory school law of the state. The relator contends that the present Sections 4831-3 and 4831-13 mean the same as their predecessors, Sections 4692 and 4696, although certain changes have been made in the language. The respondent insists that these changes are of substance as well as form and that hence the decisions of this court construing the former provisions are of little value.
As suggested by the relator, Section 4831-13 clearly provides, as did former Section 4696, that certain action must be taken by a county board of education when a petition signed by 75 per cent of the proper electors is duly presented. The former section required that "the county board of education shall make such transfer." The present section provides that "the proposed transfer of territory shall be included in the forthcoming plan of territorial organization * * *."
But of what effect is the filing of a protest signed by 51 per cent of the electors under favor of Section 4831-3 which superseded former Section 4692? In support of his contention that the provisions of Section 4831-13 are mandatory and unrelated to Section 4831-3, the relator relies upon the decisions of this court in the cases of State, ex rel. Adsmond, v. Board of Education of Williams County School Dist., 135 Ohio St. 383, 21 N.E.2d 94, State, ex rel. Misamore, v. HancockCounty Board of Education, 135 Ohio St. 394, 21 N.E.2d 99, and State, ex rel. Workman, v. Holmes County Board ofEducation, 135 Ohio St. 456, 21 N.E.2d 477, which were rendered when the former corresponding Sections 4692 and 4696 were in effect.
And in support of his view that the meaning of the former and the present sections are of similar import, the relator quotes the following fundamental principle *Page 445 
of statutory construction as stated in the first paragraph of the syllabus in the case of State, ex rel. Nimberger, v.Bushnell et al., Bd. of Edn., 95 Ohio St. 203, 116 N.E. 464:
"The reenactment of a statute in a code or revision does not change its meaning, construction or effect unless the language of the statute as revised clearly manifests the intent of the Legislature to make such change."
But the relator is in error in considering the present statutes as a mere recodification of the former ones. In 1941, the General Assembly in 119 Ohio Laws, 82, provided for the appointment of a commission for a preliminary study as follows:
"Section 2. This commission shall make a careful and thorough study of the school laws of Ohio and their application to the organization, administration, supervision and financing of the public school system, and shall, on or before January 15, 1943, submit to the General Assembly and the Governor a report which shall include a proposed recodification of the school laws of Ohio and prepare bills of suggested changes needed, and suchother recommendations pertinent to the management and financing of Ohio's public school system, as it may deem advisable." (Italics supplied.)
In 1943, when the present statutes were enacted, the title of the bill read in part as follows:
"To provide for the recodification and revision of the laws of Ohio pertaining to the public schools and for that purpose to amend Sections * * * 4679 through 4784 * * * of the General Code." (Italics supplied.)
Thus it is apparent that the General Assembly did not limit itself to mere recodification when it included "changes," "other recommendations" and a purpose "to amend" the former sections.
Furthermore, it seems hardly logical to hold that the *Page 446 
present sections are unrelated and unchanged when it is observed that they were passed by the General Assembly at the same time and as part of the same act while the former sections were not.
Under the provisions of Section 4831-3 a protest may be filed by "any group of electors, qualified to vote in territory within the territorial boundary lines of the county school district." If the protest "be signed by 51 per cent or more of the electors of the local school district or districts so affected, then the county board of education and the Superintendent of Public Instruction shall not have the authority to adopt the plan of reorganization proposed so far as the said local school district or districts protesting are concerned."
It is admitted that this protest was signed by more than 51 per cent of the electors of the North Richland-Adams Local School District. However, the relator alleges that none of the signers of the protest is an elector residing in thatpart of the local district sought to be transferred. This is immaterial in view of the requirement and admission that they are electors resident in the local district affected. Only onelocal district is involved in this proposed transfer.
In view of the protest the respondent superintendent is without authority to approve the plan of territorial organization transferring part of the territory now in the North Richland-Adams Local School District to the Henry County School District. The demurrer to the petition must be sustained and the writ of mandamus denied.
Writ denied.
BELL, WILLIAMS and TURNER, JJ., concur.
HART, J., dissents. *Page 447